ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL GENERAL DE JUSTICIA
TRIBUNAL DE APELACIONES
**PANEL X**

| | | |
|---|---|---|
| **CONSEJO DE TITULARES DEL CONDOMINIO BAHÍA COURT** DEMANDANTE(S)-RECURRIDA(S) <br><br> V. <br><br> **JOSÉ LUIS NAVARRO REYNA, CARMEN PILAR RESTO LÓPEZ Y LA SOCIEDAD LEGAL DE BIENES GANANCIALES COMPUESTA POR AMBOS** DEMANDADA(S)-PETICIONARIA(S) | **KLCE202400438** | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de **BAYAMÓN** <br><br> Caso Núm. **CT2023CV00135 (501)** <br><br> Sobre: Cobro de Dinero (Regla 60) |

Panel integrado por su presidenta, la Juez Lebrón Nieves, la Juez Barresi Ramos y la Jueza Santiago Calderón.

*Barresi Ramos*, juez ponente

### S E N T E N C I A

En San Juan, Puerto Rico, hoy día 15 de mayo de 2024.

Comparecen ante este Tribunal de Apelaciones, los señores **JOSÉ LUIS NAVARRO REYNA, CARMEN PILAR RESTO LÓPEZ Y LA SOCIEDAD LEGAL DE BIENES GANANCIALES COMPUESTA POR AMBOS** (matrimonio **NAVARRO-RESTO** y **SLG**) mediante *Petición de Certiorari* interpuesta el 16 de abril de 2024. En su recurso, nos solicitan que revisemos la *Orden* pronunciada el 9 de febrero de 2024 por el Tribunal de Primera Instancia (TPI), Sala Superior de Bayamón.[1] Mediante el antedicho dictamen, se declaró *no ha lugar* la *Moción de Desestimación por Falta de Jurisdicción* presentada el 23 de enero de 2024 por el matrimonio **NAVARRO-RESTO** y **SLG,** y concedió término para contestar la demanda.

Exponemos el trasfondo fáctico y procesal que acompaña a la presente controversia.

_____
[1] Dicha determinación judicial fue notificada y archivada en autos el 13 de febrero de 2024. Véase Apéndice de la *Petición de Certiorari*, pág. 2.

## - I -

El 5 de octubre de 2023, el **Consejo de Titulares del Condominio Bahía Court** (**Consejo**) entabló una *Demanda* sobre cobro de dinero en contra del matrimonio **Navarro-Resto** y **SLG**.[2] Adujo que el matrimonio **Navarro-Resto** y **SLG** incumplieron con su obligación de pago; adeudan la cantidad de $10,531.12 por concepto de cuotas de mantenimiento e intereses, la cual se encuentra vencida, líquida y exigible.

Luego de varios incidentes procesales, el 23 de enero de 2024, el matrimonio **Navarro-Resto** y **SLG**, sin someterse a la jurisdicción, presentaron un documento intitulado *Moción de Desestimación por Falta de Jurisdicción*.[3] Alegaron que el foro *a quo* carecía de jurisdicción sobre la materia. Ello fundamentado en que, el 29 de agosto de 2023, el señor **Navarro Reyna** instó una *Querella de Propiedad Horizontal* ante el Departamento de Asuntos de Consumidor (DACo) impugnando la deuda; solicitando un cese y desista del cobro; y procurando evitar la suspensión del servicio de electricidad o acueductos.[4] Asimismo, argumentaron que no se había agotado el remedio administrativo y solicitaron la desestimación, sin perjuicio, de la causa de acción.

El 8 de febrero de 2024, el **Consejo** presentó su *Oposición a Moción de Desestimación por Falta de Jurisdicción*.[5] Alegaron que el matrimonio **Navarro-Resto** y **SLG** erróneamente ha entendido que dicha reclamación es sobre una impugnación de asamblea por un titular, cuando la realidad es que se procura hacer cumplir lo concerniente al pago de las cuotas de mantenimiento en conformidad con la *Ley de Condominios de Puerto Rico*, conocida como la Ley 129-2020.

Posteriormente, el 9 de febrero de 2024, se dictaminó la *Orden* impugnada. Así las cosas, el 28 de febrero de 2024, el matrimonio **Navarro-**

---

[2] Véase Apéndice de la *Petición de Certiorari*, págs. 52- 63.
[3] *Íd.*, págs. 71- 80.
[4] *Íd.*, págs. 81- 84.
[5] *Íd.*, págs. 86- 97.

**RESTO** y **SLG** presentaron una *Moción de Reconsideración* en la cual razonaron que DACo tiene jurisdicción primaria exclusiva.[6] Por su parte, el 18 de marzo de 2024, el **CONSEJO** presentó su *Réplica a Moción Solicitando Reconsideración*.[7] Concluyó que la *Demanda* versa sobre la falta de pago de las cuotas de mantenimiento, y no una impugnación sobre la aprobación del presupuesto. Ante ello, el foro con jurisdicción para atender los requerimientos sobre cobros incoados por el **CONSEJO** es el tribunal de primera instancia. Finalmente, el 19 de marzo de 2024, el foro impugnado intimó *Orden* declarando no ha lugar a la *Solicitud de Reconsideración* presentada por el matrimonio **NAVARRO-RESTO** y **SLG**.[8]

Insatisfechos, el 16 de abril de 2024, el matrimonio **NAVARRO-RESTO** y **SLG** acudieron ante este foro revisor por medio de una *Petición de Certiorari* y presentaron una *Moción en Auxilio de Jurisdicción.* En la misma, señalan el(los) siguiente(s) error(es):

> Erró el Tribunal de Primera Instancia, Sala de Bayamón, al no desestimar la Demanda presentada por falta de jurisdicción en la materia, dado que la controversia traída por los recurridos está siendo impugnada ante el DACo.

El 17 de abril de 2024, intimamos *Resolución* en la cual, entre otras cosas, concedimos hasta el viernes, 26 de abril de 2024, al **CONSEJO** para presentar su posición sobre la solicitud de auxilio de jurisdicción y mostrara causa por la cual no debíamos expedir el auto de *certiorari* y revocar el dictamen impugnado. El día 25 de abril de 2024, el **CONSEJO** presentó su *Oposición a Moción en Auxilio de Jurisdicción* y *Moción en Oposición a Expedición de Auto de Certiorari*.

Evaluado concienzudamente el expediente del caso, y contando con el beneficio de la comparecencia de todas las partes, nos encontramos en posición de adjudicar. Puntualizamos las normas de derecho pertinentes a la(s) controversia(s) planteada(s).

---

[6] Véase Apéndice de la *Petición de Certiorari*, págs. 3- 5.
[7] *Íd.*, págs. 6- 23.
[8] *Íd.*, pág. 1.

- II –

- A –

El auto de *certiorari* es un vehículo procesal extraordinario utilizado para que un tribunal de mayor jerarquía pueda revisar discrecionalmente las órdenes o resoluciones interlocutorias emitidas por una corte de inferior instancia judicial.[9] Por ello, la determinación de expedir o denegar este tipo de recurso se encuentra enmarcada dentro de la discreción judicial.[10]

De ordinario, la discreción consiste en "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera".[11] Empero, el ejercicio de la discreción concedida "no implica la potestad de actuar arbitrariamente, en una u otra forma, haciendo abstracción del resto del derecho".[12]

Ahora bien, en los procesos civiles, la expedición de un auto de *certiorari* se encuentra delimitada a las instancias y excepciones contenidas en la Regla 52.1 de las de Procedimiento Civil de 2009.[13] La mencionada Regla dispone que solo se expedirá un recurso de *certiorari* cuando, "se recurra de una resolución u orden bajo remedios provisionales de la Regla 56, injunctions de la Regla 57 o de la denegatoria de una moción de carácter dispositivo".[14] En ese sentido, y a manera de excepción, se podrá expedir este auto discrecional cuando:

> (1) se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales;
> (2) en asuntos relacionados a privilegios evidenciarios;
> (3) en casos de anotaciones de rebeldía;
> (4) en casos de relaciones de familia;
> (5) en casos revestidos de interés público; o
> (6) en cualquier situación en la que esperar a una apelación constituiría un fracaso irremediable de la justicia. [15]

---

[9] *Rivera Gómez v. Arcos Dorados Puerto Rico Inc.*, 2023 TSPR 65; 212 DPR ___ (2023); *Torres González v. Zaragoza Meléndez*, 211 DPR 821 (2023); *McNeil Healthcare v. Mun. Las Piedras I*, 206 DPR 391, 403 (2021).
[10] *Íd.*
[11] *Medina Nazario v. McNeil Healthcare LLC*, 194 DPR 723, 729 (2016).
[12] *Íd.*
[13] 32 LPRA Ap. V, R. 52.1; *Torres González v. Zaragoza Meléndez, supra*.
[14] *Caribbean Orthopedics v. Medshape et al.*, 207 DPR 994, 1004 (2021).
[15] 4 LPRA Ap. XXII-B, R. 40; *Torres González v. Zaragoza Meléndez, supra*; *McNeil Healthcare v. Mun. Las Piedras I, supra*, pág. 404; *800 Ponce de León v. AIG*, 205 DPR 163 (2020).

Lo anterior constituye tan solo la primera parte de nuestro análisis sobre la procedencia de un recurso de *certiorari* para revisar un dictamen del Tribunal de Primera Instancia. De modo que, aun cuando un asunto esté comprendido entre las materias que las Reglas de Procedimiento Civil de 2009 nos autorizan a revisar, el ejercicio prudente de esta facultad nos requiere tomar en consideración, además, los criterios dispuestos en la Regla 40 del Reglamento del Tribunal de Apelaciones.[16]

Por otro lado, el examen de los [recursos] discrecionales no se da en el vacío o en ausencia de otros parámetros.[17] Para ello, la Regla 40 de nuestro Reglamento instituye los indicadores a considerar al evaluar si se debe o no expedir un recurso de *certiorari*. A saber:

> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho;
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema;
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia;
> (D) Si el asunto planteado exige una consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados;
> (E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración;
> (F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio; y
> (G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.[18]

Es preciso aclarar, que la anterior no constituye una lista exhaustiva, y ninguno de estos criterios es determinante, por sí solo, para justificar el ejercicio de nuestra jurisdicción.[19] En otras palabras, los anteriores criterios nos sirven de guía para poder determinar de la forma más sabia y prudente si se justifica nuestra intervención en la etapa del procedimiento en que se encuentra el caso.[20] Ello, pues distinto al recurso de apelación, este Tribunal posee discreción para expedir el auto de *certiorari*. La delimitación que

---

[16] *McNeil Healthcare v. Mun. Las Piedras I, supra*, pág. 404; *800 Ponce de León v. AIG, supra*.
[17] *Íd.*
[18] 4 LPRA Ap. XXII-B, R. 40; *Torres González v. Zaragoza Meléndez, supra*; *Rivera Figueroa v. Joe´s European Shop*, 183 DPR 580 (2011).
[19] *García v. Padró*, 165 DPR 324, 335 esc. 15 (2005).
[20] *Mun. Caguas v. JRO Construction, Inc.*, 201 DPR 703, 712 (2019).

imponen estas disposiciones reglamentarias tiene "como propósito evitar la dilación que causaría la revisión judicial de controversias que pueden esperar a ser planteadas a través del recurso de apelación."[21]

Finalmente, este Tribunal solo intervendrá con las determinaciones interlocutorias discrecionales procesales del tribunal sentenciador cuando este último haya incurrido en un craso abuso de discreción.[22] Esto es, "que el tribunal actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial".[23]

**- B –**

La *jurisdicción* se refiere al poder o autoridad de un tribunal para considerar y decidir casos, por lo que su ausencia priva a un foro judicial del poder necesario para adjudicar una controversia.[24] Es por ello, que los tribunales deben ser celosos guardianes de su *jurisdicción*. Aun en ausencia de un señalamiento por alguna de las partes, la falta de *jurisdicción* puede ser considerada *motu proprio* por los tribunales. Las cuestiones de *jurisdicción* por ser privilegiadas deben ser resueltas con preferencia.[25]

La ausencia de *jurisdicción*, por tanto, acarrea las siguientes consecuencias: priva a un foro judicial del poder necesario para adjudicar una controversia; los tribunales no poseen discreción para asumirla cuando no la tienen; no es susceptible de ser subsanada; las partes no pueden conferírsela voluntariamente a un tribunal como tampoco puede este arrogársela; conlleva la nulidad de los dictámenes emitidos; se impone a los tribunales el ineludible deber de auscultar su propia *jurisdicción* —y a los tribunales apelativos la obligación de examinar la *jurisdicción* del foro de donde procede

---

[21] *Scotiabank v. ZAF Corp. et al.*, 202 DPR 478, 486– 487 (2019); *Mun. Caguas v. JRO Construction Inc.*, *supra*.

[22] *García v. Asociación*, 165 DPR 311, 322 (2005).

[23] *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986).

[24] *Payano v. SLG Cruz-Pagán*, 209 DPR 876, 889 (2022) (Sentencia)*; Metro Senior v. AFV*, 209 DPR 203, 208 (2022); *Allied Mgmt. Group. v. Oriental Bank*, 204 DPR 374, 385-386 (2020).

[25] *Fuentes Bonilla v. ELA et al.*, 200 DPR 364, 373 (2018).

el recurso—; las cuestiones jurisdiccionales deben ser resueltas con preferencia sobre otros asuntos, y su alegación puede presentarse en cualquier etapa del procedimiento, a instancia de las partes o por el tribunal *motu proprio*.[26] Esto es, la falta de jurisdicción constituye "una defensa irrenunciable, que puede ser planteada a petición de parte o el tribunal *motu proprio* y en cualquier etapa de los procedimientos, incluso en fases apelativas".[27]

Por tratarse de una cuestión de umbral en todo procedimiento judicial, si un tribunal determina que carece de *jurisdicción* solo resta así declararlo y desestimar la reclamación inmediatamente, sin entrar en los méritos de la controversia, conforme lo ordenado por las leyes y reglamentos para el perfeccionamiento del recurso en cuestión.[28]

En cambio, la Regla 10.8(c) de las de Procedimiento Civil de 2009 instituye que, siempre que surja, por indicación de las partes o de algún otro modo, que el tribunal carece de *jurisdicción* sobre la materia, éste desestimará el pleito.[29] Por tanto, los tribunales deben desestimar una acción civil cuando surge la falta de *jurisdicción* sobre la materia ante el foro aludido.[30]

En el ámbito del derecho administrativo, cuando el Estado delega funciones gubernamentales a las agencias administrativas, puede haber incertidumbre con respecto a qué foro, si el judicial o administrativo, tiene *jurisdicción* original para dilucidar una controversia que surja concerniente a la función delegada. En esos casos, para determinar qué foro tiene *jurisdicción* original hemos utilizado la doctrina de *jurisdicción* primaria.[31]

Nuestro más Alto Foro ha establecido dos (2) vertientes de la doctrina de *jurisdicción* primaria: la *jurisdicción* primaria exclusiva y la *jurisdicción*

---

[26] *Allied Mgmt. Group. v. Oriental Bank, supra*, pág. 386.
[27] *PR Eco Park et al. v. Mun. de Yauco*, 202 DPR 525, 539 (2019).
[28] *Id.*, págs. 386- 387; *Torres Alvarado v. Madera Atiles*, 202 DPR 495, 501 (2019).
[29] 32 LPRA Ap. V, R.10.8 (c).
[30] *González v. Mayagüez Resort & Casino*, 176 DPR 848 (2009).
[31] *Rodríguez Rivera v. De León Otaño*, 191 DPR 700 (2014).

primaria concurrente.[32] En pocas palabras, la *jurisdicción* primaria exclusiva está presente cuando la propia ley decreta que el foro administrativo tendrá *jurisdicción* inicial exclusiva para entender en la reclamación. Por el contrario, la *jurisdicción* primaria concurrente tiene lugar cuando la ley permite que la reclamación se inicie en la agencia o en el tribunal. [D]ebe tenerse en cuenta que la *jurisdicción* exclusiva no soslaya la revisión judicial, sino que la pospone hasta tanto el organismo administrativo emita su determinación final.[33]

### - C –

La Regla 10.2 de las de Procedimiento Civil de 2009 instaura que las defensas de hecho o de derecho contra una reclamación deben presentarse antes de una alegación responsiva. Una moción de *desestimación* bajo la precitada regla es aquella que presenta la parte demandada previo a contestar la demanda solicitando que se desestime la causa de acción presentada en su contra.[34]

Esta Regla dispone como fundamentos para la *desestimación*: (1) falta de jurisdicción sobre la materia; (2) falta de jurisdicción sobre la persona; (3) insuficiencia del emplazamiento; (4) insuficiencia del diligenciamiento del emplazamiento; (5) dejar de exponer una reclamación que justifique la concesión de un remedio; o (6) dejar de acumular una parte indispensable.[35]

El estándar adjudicativo al evaluar una moción de *desestimación* exige que los tribunales tomen como ciertos "todos los hechos bien alegados de la demanda y que hayan sido aseverados de manera clara y concluyente".[36] La obligación de tomar como ciertos únicamente los hechos bien alegados de la demanda supone excluir del análisis las conclusiones de derecho o las alegaciones redactadas de tal forma que su contenido resulte hipotético.[37]

---

[32] *Íd.*

[33] *Beltrán Cintrón v. ELA*, 204 DPR 89, 104 (2020).

[34] Véase: Rafael Hernández Colón, *Práctica Jurídica de Puerto Rico: Derecho Procesal Civil*, 6ta edición, Lexis Nexis, (2017)., págs. 305– 306.

[35] 32 LPRA Ap. V, R. 10.2.

[36] *González Méndez v. Acción Social et al.*, 196 DPR 213 (2016).

[37] José A. Cuevas Segarra, *Tratado de Derecho Procesal Civil,* San Juan, Pubs. JTS, 2011, T. II, págs. 529 (citado en *Asociación Puertorriqueña de Importadores de Cerveza, Inc. v. ELA,* 171

Cuando se plantea una *desestimación* por falta de *jurisdicción* sobre la materia, "es necesario determinar si, tomando como cierto lo alegado por el demandante, el foro tiene jurisdicción para atender el reclamo".[38]

Como parte de este estándar adjudicativo, los tribunales están llamados a interpretar las alegaciones de la demanda conjuntamente y de forma liberal a favor de la parte demandante, resolviendo toda duda a su favor y concediendo el beneficio de cuanta inferencia sea posible hacer de los hechos bien alegados en la demanda.[39] Ante ello, "debemos considerar, 'si a la luz de la situación más favorable al demandante, y resolviendo toda duda a favor de [e]ste, la demanda es suficiente para constituir una reclamación válida'".[40] Luego, debe determinar si, a base de esos hechos que aceptó como ciertos, la demanda establece una reclamación plausible que justifique la concesión de un remedio. Así, si de este análisis el Tribunal entiende que no se cumple con el estándar de plausibilidad entonces debe desestimar la demanda, pues no debe permitir que proceda una demanda insuficiente bajo el pretexto de que se podrán probar las alegaciones con el descubrimiento de prueba.[41]

De esta forma, solo procederá una moción de *desestimación* cuando la parte demandante no demuestre tener derecho a remedio alguno bajo cualesquiera hechos y estado de derecho que pudiera probar en un juicio.[42] En otras palabras, no "procede la desestimación, si la demanda es susceptible de ser enmendada".[43]

### - D –

La Ley Núm. 129-2020, mejor conocida como la *Ley de Condominios de Puerto Rico*, se aprobó con el fin de actualizar las normas que rigen la

DPR 140, 149 (2007) (Rebollo López, opinión de conformidad)).
[38] *Harguindey Ferrer v. Universidad Interamericana de PR*, 148 DPR 13, 30 (1999).
[39] *González Méndez v. Acción Social et al., supra,* pág. 234.
[40] *Aut. Tierras v. Moreno & Ruiz Dev. Corp.*, 174 DPR 409 (2008).
[41] Véase: Rafael Hernández Colón, *Derecho Procesal Civil*, 5ta ed., San Juan, LexisNexis, 2010, pág. 268.
[42] *Colón Rivera et al. v. ELA*, 189 DPR 1033, 1049 (2013), que cita a R. Hernández Colón, *Derecho Procesal Civil*, 4ta ed., San Juan, Ed. Lexis-Nexis, 2007, pág. 231. *Ortiz Matías v. Mora Development*, 187 DPR 649 (2013).
[43] *Ortiz Matías v. Mora Development, supra*.

convivencia en los condominios y atemperar la norma estatutaria a cambios sociológicos experimentados en el país.[44] Dado que, subyace la necesidad imperiosa de crear "unas reglas mínimas para el uso y disfrute de cada apartamento" que "facilit[en] la convivencia entre los titulares de un inmueble, sin que se intervenga indebidamente con los derechos individuales de los demás".[45]

El Artículo 65 de dicha Ley, intitulado *Impugnaciones de Acciones u Omisiones de la Junta de Directores, Administrador Interino y Acuerdos y Determinaciones del Consejo*, dispone que: las acciones u omisiones, así como, los acuerdos del Consejo de Titulares podrán ser impugnados por los titulares en los siguientes supuestos: a) cuando sean contrarios a esta Ley, la escritura matriz y reglamento del condominio; b) cuando resulten gravemente perjudiciales a los intereses de la comunidad o a un titular; y c) cuando resulten gravemente perjudiciales para algún titular que no tenga obligación jurídica para soportarlo y no haya sido previsible al momento de la compra.[46] Los titulares que sean dueños de apartamentos en condominios con al menos un apartamento de uso residencial tendrán que presentar cualquier querella de impugnación o reclamación ante el Departamento de Asuntos del Consumidor, DACo, el cual tendrá jurisdicción primaria y exclusiva.[47]

Cónsono con lo anterior, el Artículo 66 de la Ley Núm. 129-2020 precisa que DACo poseerá una División Especial de Adjudicación de Querellas de Condominios. El secretario tendrá la capacidad de nombrar el personal necesario para la pronta atención de las querellas presentadas por los titulares de apartamentos al amparo de esta Ley contra el Consejo de Titulares, el Agente Administrador, o por la Junta de Directores al amparo de

---

[44] Ley 129-2020, *Ley de Condominios de Puerto Rico*, 31 LPRA sec. 1291 et seq. Véase la *Exposición de motivos de la Ley 129-2020*.
[45] *Junta Dir. Cond. Montebello v. Torres*, 138 DPR 150, 154 (1995).
[46] Art. 65 de la *Ley de Condominios de Puerto Rico*, 31 LPRA sec. 1923j et seq.
[47] Art. 65 de la *Ley de Condominios de Puerto Rico*, 31 LPRA sec. 1923j.

aquellas leyes especiales aplicables.[48] Asimismo, el secretario tendrá la facultad para adoptar y/o modificar los reglamentos necesarios para la adjudicación de las querellas presentadas ante el DACo y para el fiel cumplimiento de esta Ley.

Así pues, acorde con los poderes conferidos por la Ley 129-2020, DACo, promulgó el Reglamento 9386, conocido como el *Reglamento de Condominios*, el cual especifica en su Regla 23, que las querellas entre titulares o cuando el consejo de titulares, el director o la junta de directores presente una reclamación contra uno o varios titulares o residentes del condominio, la *jurisdicción* le corresponderá al Tribunal de Primera Instancia.[49]

Por otro lado, el Artículo 59 de la *Ley de Condominios de Puerto Rico* implanta que la deuda de un titular por concepto de cuotas de mantenimiento para gastos comunes se podrá reclamar judicialmente luego de ser requerido [el] pago mediante correo certificado con acuse de recibo y de este no cumplir el pago en el plazo de vencimiento.[50]

- III –

Como único señalamiento de error, el matrimonio **NAVARRO-RESTO** y **SLG** alegan que el Tribunal de Primera Instancia incidió al no desestimar la *Demanda* por falta de jurisdicción sobre la materia. Dado que, la deuda que se intenta cobrar en la *Demanda* está bajo un proceso de adjudicación ante el Departamento de Asuntos del Consumidor (DACo). Enuncian que el **CONSEJO** pretende re litigar la misma causa de acción o reclamación que esta ante el DACo. Es la posición de esta Curia que no le asiste la razón.

Por su parte, el **CONSEJO** adujo que no hay dualidad de controversias, toda vez que la *Demanda* incoada por el **CONSEJO** no versa sobre la impugnación de una asamblea por un titular, sino del poder que tiene dicho cuerpo, delegado a la junta de directores, para entablar las acciones que

---

[48] Art. 66 de la *Ley de Condominios de Puerto Rico*, 31 LPRA sec. 1923j.
[49] Reglamento Núm. 9380, Reglamento de Condominios, aprobado el 11 de mayo de 2022.
[50] Art. 59 de la Ley de Condominios de 2020, Ley Núm. 129-2020 (31 LPRA sec. 1923j).

entienda pertinentes dirigidas a hacer cumplir la Ley 129-2020, así como el Reglamento y la Escritura Matriz del Condominio Bahía Court.

En el caso que nos atiene, el 7 de marzo de 2023, el **CONSEJO,** remitió una segunda misiva, por correo certificado con acuse de recibo, al matrimonio **NAVARRO-RESTO** y **SLG** en la cual requirió el pago de las cuotas de mantenimiento en atraso.[51] Al poco tiempo, el 5 de abril de 2023, el **CONSEJO** envió una tercera comunicación concerniente a la deuda por concepto de cuotas de mantenimiento.[52] Ante el alegado incumplimiento de pago de la cuota de mantenimiento y habiendo remitido, por correo certificado con acuse de recibo, misiva al titular el **CONSEJO** incoó su reclamo sobre cobro de dinero ante el tribunal.

Una simple lectura de la Regla 23 del Reglamento 9386, concierta que toda querella entre titulares o cuando el consejo de titulares, el director o la junta de directores presente una reclamación contra uno o varios titulares o residentes del condominio, la *jurisdicción* le incumbirá al Tribunal de Primera Instancia.

Por otro lado, el matrimonio **NAVARRO-RESTO** y **SLG** están impugnando una asamblea ordinaria en la cual se aprobó un presupuesto del condominio. Esta acción está reconocida en el Artículo 65 de la Ley 129-2020 que permite que las acciones u omisiones del Consejo de Titulares puedan impugnarse por los titulares ante el DACo. Ante este cuadro de hechos, el DACo **no** ostenta jurisdicción sobre la causa de acción de cobro de las cuotas de mantenimiento. En definitiva, procedía declarar no ha lugar la *Moción de Desestimación por Falta de Jurisdicción.*

- **IV** –

Por los fundamentos antes expuestos, ***expedimos*** el auto de *Certiorari* instado el 16 de abril de 2024 por el matrimonio **NAVARRO-RESTO** y **SLG;** y, en consecuencia, se ***confirma*** la *Orden* dictaminada el 9 de febrero de 2024.

---

[51] Véase Apéndice de la *Petición de Certiorari*, págs. 18- 19.
[52] *Íd.*, págs. 21- 22.

*No ha lugar* a solicitud de auxilio de jurisdicción presentada el 16 de abril de 2024 por el matrimonio **NAVARRO-RESTO** y **SLG**.

Al amparo de la Regla 35 (A)(1) de nuestro Reglamento, el Tribunal de Primera Instancia, Sala Superior de Bayamón, puede proceder de conformidad con lo aquí resuelto, sin que se tenga que esperar por el recibo de nuestro mandato.[53]

**Notifíquese inmediatamente.**[54]

Lo acordó el Tribunal y lo certifica la Secretaría del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[53] 4 LPRA Ap. XXII-B R. 35. La Regla 35 (A)(1) enuncia: "La presentación de una solicitud de *certiorari* no suspenderá los procedimientos ante el Tribunal de Primera Instancia, salvo una orden en contrario expedida por iniciativa propia o a solicitud de parte por el Tribunal de Apelaciones. La expedición del auto de *certiorari* suspenderá los procedimientos en el Tribunal de Primera Instancia, **salvo que el Tribunal de Apelaciones disponga lo contrario.**" 4 LPRA Ap. XXII-B R. 35.

[54] Surge de la *Minuta* de 13 de marzo de 2024 que este caso tiene audiencia (Conferencia Inicial) pautada para el **20 de mayo de 2024 a las 9:00 de la mañana**.